RECEIVED CLERK

2001 MAY -3 P 4: 53

**FILED**

U.S. DISTRICT COURT
DISTRICT OF UTAH

**ANDERSON & KARRENBERG**
Thomas R. Karrenberg, #3726
Scott A. Call, #0544
700 Bank One Tower
50 West Broadway
Salt Lake City, Utah 84101-2006
Telephone: (801) 534-1700
**Liaison Counsel for the Class**

**WEISS & YOURMAN**
Joseph H. Weiss
Jack Zwick
551 – Fifth Avenue, Ste 1600
New York, New York 10176
Telephone: (212) 682-3025

**MILBERG WEISS BERSHAD HYNES
& LERACH LLP**
William C. Fredericks
Brian C. Kerr
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594-5300

**SCHIFFRIN & BARROWAY, LLP**
David Kessler
Stuart Berman
Three Bala Plaza East, Ste 400
Bala Cynwyd, Pennsylvania 19004
Telephone: (610) 667-7706

**MILBERG WEISS BERSHAD HYNES
& LERACH LLP**
Lori G. Feldman
1001 Fourth Avenue, Ste 3200
Seattle, Washington 98154
Telephone: (206) 839-0730

**WEISS & YOURMAN**
Kevin J. Yourman
Behram V. Parekh
10940 Wilshire Blvd, 24th Floor
Los Angeles, California 90024
Telephone: (310) 208-2800

**Co-Lead Counsel for the Class**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HARVEY ANDERSON, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> FIRST SECURITY CORPORATION, SPENCER F. ECCLES, MORGAN J. EVANS, and BRAD D. HARDY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Consolidated Case
No. 2:00cv-418 K**

**PLAINTIFFS' REPLY TO
DEFENDANTS'
OPPOSITION TO
PLAINTIFFS' ORAL
MOTION TO LIFE STAY
OF DISCOVERY**

Plaintiffs, by their undersigned attorneys, respectfully submit this memorandum in reply to

Defendants' Opposition to Plaintiffs' Oral Motion to Partially Lift the Stay of Discovery.



## PRELIMINARY STATEMENT

At the April 11, 2001 hearing, Plaintiffs requested leave of the Court to conduct limited discovery of current and former employees of Zions Bancorporation ("Zions") in the event that the Court concluded that any aspect of the Amended Complaint was pleaded with insufficient particularity. As Plaintiffs pointed out at the hearing, Plaintiffs have already obtained (and pled) significant, credible information describing how Zions—a highly respected banking institution—became aware of specific fraudulent practices at First Security during the alleged Class Period while conducting due diligence into First Security's business and accounting practices in connection with the aborted Zions/First Security merger (the "Merger").

However, as Plaintiffs' counsel also stated at the hearing, Plaintiffs have been prevented from obtaining even more detailed information from Zions personnel concerning First Security's wrongful conduct by the terms of a confidentiality agreement with First Security — an agreement which (according to Plaintiffs' sources) prohibits Zions or its employees from voluntarily sharing additional information about First Security obtained in the course of Zion's Merger-related due diligence.  Because of the confidentiality agreement, Defendants are in the unusual position of being able to prevent Plaintiffs from obtaining further pertinent information not only from the Defendants themselves (as contemplated by the PSLRA), *but also from third parties*—*even though those third parties would otherwise be willing to provide the information.  **For example, Zions' counsel has recently informed Plaintiffs' counsel that Zions would not object to (a) producing documents relating to Plaintiffs' allegations, and (b) producing Zions' Chief Executive Officer and Chief Financial Officer for deposition on matters relating to Plaintiffs' allegations, provided that the information is requested pursuant to a valid subpoena.*** See Affidavit of Thomas R. Karrenberg attached here to as Exhibit "A".

1

In these circumstances, First Security's objections to a limited lifting of the PSLRA discovery stay are plainly inapposite.  First, although Defendants correctly note that Congress enacted the PSLRA to shield defendants from "fishing expeditions" and inordinate discovery costs that risk "forc[ing] innocent parties to settle frivolous securities class actions" (see Def. Opp. at 3), *none* of these concerns is implicated here.  For example, the discovery sought is plainly not part of a coercive "fishing expedition," but is instead designed to seek additional particulars relating to highly credible claims *already* alleged in no small detail in the current Complaint.  Moreover, Plaintiffs do not seek discovery from defendant First Security or any of the Individual Defendants, *but instead seek only to obtain information from third parties that would otherwise have already been provided to Plaintiffs but for the existence of the confidentiality agreement*.  As case law makes confirms, it is one thing for defendants to use the PSLRA to shield themselves from discovery in the early stages of a litigation -- but it is another thing altogether to allow a defendant to use the PSLRA as a sword to prevent otherwise willing third-party witnesses from providing information relating to that defendants' fraud.  See, e.g., In re Flir Systems, Inc. Sec. Litig., 2000 U.S. Dist LEXIS 19391 at *8-9, Fed. Sec. L. Rep. (CCH) ¶ 91,308 [Current Binder] (D. Ore. Dec. 13, 2000) (permitting service of subpoena on third party, known to have relevant information, who would otherwise have been prohibited from providing information by confidentiality agreement with Defendants).

Defendants' further objection that Plaintiffs do not seek sufficiently "particularized" discovery is also misplaced.  Specifically, Plaintiffs seek the lifting of the discovery stay for the limited purpose of serving a deposition subpoena and accompanying document request on Zions, Zions' CEO (Mr. Harris Simmons), Zions' CFO (Mr. Dale Gibbons), and up to one other current or former Zions' employee as may be appropriate in the wake of Mr. Harris' and Mr. Gibbons' deposition. *As already*

noted, *Zions has represented to Plaintiffs that it has no objection to providing this discovery, provided that it is done pursuant to subpoena (thereby freeing Zions of potential liability under the terms of the confidentiality agreement with First Security)*. By virtue of their intimate involvement in Zions' Merger-related due diligence, these Zions officers also plainly have "special information" (to use Defendants' terminology) concerning (a) the details of First Security's loan portfolio during the Class Period, (b) First Security's failure to take appropriate loan write-offs and other GAAP violations, and (c) the bases for Zions' determination that Defendants' had misrepresented First Security's fourth quarter 1999 operating results by at least $0.04.

The PSLRA may reflect a public policy to protect securities fraud defendants (including potential defendants) from fishing expeditions and costly discovery -- but there is clearly *no* public policy in favor of allowing defendants to use confidentiality agreements to prevent evidence of securities fraud in the hands of *third parties* from becoming public, which would effectively allow such defendants to insulate themselves from liability. Flir at *9 (lifting PSLRA discovery stay); Medical Imaging Centers of America v. Lichtenstein, 917 F. Supp. 717, 720 (S.D. Cal. 1996) (same); Vacold LLC v. Cerami, 2001 U.S. Dist. LEXIS 1589, *20-25, Fed. Sec. L. Rep. (CCH) ¶ 91, 334 [Current Binder], (S.D.N.Y. Feb. 16. 2001) (same); see also McGrane v. Reader's Digest Ass'n, Inc., 822 F. Supp. 1044, 1046 (S.D.N.Y. 1993) (noting that, as a matter of public policy, courts are increasingly reluctant to enforce secrecy arrangements where matters of substantial public interest are involved) (collecting cases).

Plaintiffs will be severely prejudiced unless they are granted the limited third party discovery they seek, particularly if the Court concludes that plaintiffs' complaint, while articulating numerous bases for liability, lacks only a few details that, by their very nature, would likely be known only to

3

defendants or to those third parties —such as Zions—who had access to "insider" information.  In contrast, neither Defendants (who are not the subject of the limited discovery sought) nor the third parties at issue (who have no objection to Plaintiffs' application) would be prejudiced by the requested discovery.  Moreover, public policy concerns weigh *against* the use of confidentiality agreements to muzzle third parties' ability to provide information concerning corporate fraud, and weigh *in favor* of permitting credible claims of securities fraud to go forward.  Plaintiffs' limited request for a partial lifting of the PSLRA discovery stay should therefore be granted.

## ARGUMENT

1.  **PLAINTIFFS' DISCOVERY REQUEST IS NOT CONTRARY TO THE PURPOSE OF THE PSLRA's DISCOVERY STAY PROVISIONS, AND FALLS SQUARELY WITHIN THE UNDUE PREJUDICE EXCEPTION THAT IS EXPRESSLY AUTHORIZED BY THE STATUTE**

   A.   <u>Background: The Public Policy Concerns Underlying the PSLRA</u>

Congress enacted the PSLRA to redress certain perceived abuses in securities class actions including "the abuse of the discovery process to coerce settlement." <u>SG Cowen Securities. Corp. v. United States Dist. Ct.</u>, 189 F.3d 909, 911 (9th Cir. 1999).  Specifically, the PSLRA stays discovery during the pendency of a dismissal motion "unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence *or to prevent undue prejudice to that party*." 15 U.S.C. § 78u-4(b)(3)(B) (emphasis added).   The stay provision was "intended to prevent unnecessary imposition of discovery costs on defendants," House Conference Report No. 104-369, 104th Cong. 1st Sess. at 32 (1995) (attached as Exhibit A to Defendants' Opposition), and reflected Congress's belief that the "cost of discovery often forces innocent parties to settle frivolous securities class actions." <u>Id.</u> at 37.  In addition, Congress wanted to prevent plaintiffs from using discovery to conduct "fishing expeditions" where broad discovery was used to find "a sustainable claim not alleged in the complaint."

4

Senate Report No. 104-98, 104th Cong. 1st Sess. at 14 (1995); see also Medhekar v. United States Dist. Ct., 99 F.3d 325, 328 (9th Cir. 1996) (stating that complaints in federal securities actions "should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the *defendants* after the action has been filed") (emphasis added).

However, while seeking to limit "abusive and meritless suits," H.R. Conf Rep. 104-369 at 31, Congress made equally clear that it strongly supported the bringing of *meritorious* securities fraud actions. As the very first sentences of the PSLRA Conference Committee stated:

> The overriding purpose of our Nation's securities laws is to protect investors and to maintain confidence in the securities markets, so that our national savings, capital formation and investment may grow for the benefit of all Americans.
>
> The private securities litigation system is too important to the integrity of American capital markets to allow this system to be undermined by those who ... bring[] abusive and meritless suits. *Private securities litigation is an indispensable tool with which defrauded investors can recover their losses without having to rely on government action. Such private lawsuits promote public and global confidence in our capital markets and help to deter wrongdoing and to guarantee that corporate officers, auditors, directors, lawyers and others properly perform their jobs.* This legislation seeks to return the securities litigation standard to that high standard.

Id. (reproduced at p. 730 of Defendants' Exhibit A) (emphasis added). Accordingly, the PSLRA was intended to strike a balance that would discourage frivolous and abusive lawsuits, while continuing to encourage plaintiffs to bring meritorious suits. As part of that balance, Congress decided to protect *defendants* from discovery until plaintiffs had alleged claims sufficient to survive a motion to dismiss— but implicit in that policy choice was Congress's intention that plaintiffs should be encouraged to pursue informal, pre-filing investigations of credible claims of fraud by seeking out information from *third party sources*.

5

Because the PSLRA undeniably reflects a balance of competing interests, the fundamental question presented by Plaintiffs' motion is whether the limited discovery sought would violate the PSLRA's general policy of protecting defendants from "frivolous" lawsuits and coercive discovery demands, or whether the discovery sought falls within category of narrowly tailored, particularized discovery "necessary to prevent undue prejudice" that Congress has expressly provided for by statute. See 15 U.S.C. § 78u-4(b)(3)(B).

### B.    The Rationale Behind The PSLRA's Discovery Stay Does Not Extend To Non-Frivolous Cases Where Key Information is Sought is From Willing Third Parties

The rationale underpinning the PSLRA's discovery stay is clearly inapplicable—or at least greatly diminished—when the discovery is sought from third-parties, such as Zions and its employees, who are neither defendants nor potential defendants. See, e.g., Dartley v. Ergobilt, Inc., 1998 U.S. Dist. LEXIS 17751, *6 (N.D. Tex. 1998) (upholding magistrate's ruling that allowing the deposition of a third party witness did not frustrate the intent of the PSLRA); In re Flir Systems, Inc. Sec. Litig., 2000 U.S. Dist. LEXIS 19391, *6 (D. Or. 2000) ("the reasons for the PSLRA's stay of discovery are diminished when discovery is sought only from a single third party, not a Defendant"). Only in situations where discovery is sought from a potential defendant or potential third-party defendant are Congress' concerns in legislating the automatic stay provision of the PSLRA implicated. See In re Carnegie International Corp. Sec. Litig., 107 F. Supp. 2d 676, 680 (D. Md. 2000) (finding that "Congress intended to protect not just named defendants in securities actions, but potential defendants (or third party defendants) as well").[1]   Here, Zions is not targeted as a potential defendant by either

---

[1]   In Carnegie, the court granted the motion of defendants' former accountant/auditor to quash defendants' subpoena, but did so on the grounds that the defendants had expressed their intent to implead the accountant as a third party defendant. The parties in Carnegie had entered into an agreement whereby defendants would make available to plaintiffs any response by their former accountant to their subpoena and, in return, plaintiffs agreed that issuance of defendants'

party and has no connection to the fraud committed by Defendants, other than Zions' ultimate discovery of Defendant's improper manipulations of First Security's reported financial results.

Despite their bald assertions to the contrary, Defendants would incur very little or no expense in connection with plaintiffs' proposed limited discovery of Zions. Accordingly, the marginal cost to the parties of permitting the requested discovery to take place would obviously not subject the defendants to any "coercive" discovery threats.

In addition, this is also plainly not a case based on "frivolous" or "abusive" allegations, or a situation where the requested discovery is intended as a "fishing expedition." To the contrary, as in Flir, plaintiffs seek a partial lifting of the discovery stay to obtain additional relevant information in support of highly credible claims, in circumstances where it is only the unfortunate existence of a confidentiality agreement that has prevented the third party from disclosing the information earlier. See Flir at * 6 ("Additionally, unlike Cowen, the court has not allowed [the third-party's] deposition merely as part of a fishing expedition"); Vacold, 2001 U.S. Dist. LEXIS 1589 at *24 ("[T]he requested discovery does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the complaint").

## C.   A Narrowly Tailored Lifting of the PSLRA's Discovery Stay Is Warranted On Grounds Of Undue Prejudice

Having established that this is decidedly not a case where the policy reasons behind the PSLRA weigh in favor of a stay, we next consider whether there is "undue prejudice" that weighs in

---

subpoena did not constitute a waiver of defendants' rights under the automatic stay provision of the PSLRA. Id. at 680, n2. The court determined that the discovery of the defendants' former accountant and auditor appeared "to be nothing more than a fishing expedition by both parties to obtain evidence that can form the basis of a case against [the accountant]." Id. at 680.

favor of partially lifting the stay under 15 U.S.C. § 78u-4(6)(3)(B). Here, the undue prejudice is readily apparent.

Courts have defined the "undue prejudice" sufficient to overcome the statutory bar as "improper or unfair treatment" amounting to something less than irreparable harm. Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 720 (S.D. Cal. 1996). Moreover, several courts have lifted the discovery stay on grounds of "undue prejudice" where defendants might be shielded from liability in the absence of the requested discovery. See Flir, 2000 U.S. Dist. LEXIS 19291, * 9 ("Allowing defendants to seek dismissal . . . without affording plaintiffs the opportunity to discover [third party] Palmquist's information regarding defendants' fraud – information which is known to exist and which has been withheld only as a result of defendants' efforts to silence Palmquist – would result in 'undue prejudice' to plaintiffs."); Vacold, 2001 U.S. Dist. LEXIS 1589, *24-25 ("the removal of the PSLRA's discovery stay is warranted on the grounds of undue prejudice, because failure to allow discovery on the limited issue . . . may unfairly insulate defendants from liability"); Med Imaging, 917 F. Supp. at 720 (stating that a stay of discovery would cause undue prejudice where it may "shield . . . [defendants] from eventual liability for any material violations of the securities laws").

As Plaintiffs noted at the April 11, 2001 hearing on Defendants' Motion to Dismiss, the instant case is closely analogous to Flir, in that the only reason Zions has not already shared the requested information with Plaintiffs is because they are bound by a confidentiality agreement with First Security and cannot provide information to Plaintiffs absent a subpoena. See Flir, 2000 U.S. Dist. LEXIS 19291, * 8 ("defendants have taken steps to ensure that Palmquist could not talk to Plaintiffs or provide relevant documents without the protection of being ordered to do so pursuant to a subpoena"). As the Flir court stated:

8

The PSLRA is a shield intended to protect security-fraud defendants from costly discovery requirements, Cowen, 189 F.3d at 911, not to be a sword with which defendants can destroy plaintiffs' ability to obtain information from third parties who are otherwise willing to disclose it.

Id. at *8-9.  See also Dartley at *6 (rejecting defendants' efforts to prevent "the deposition of a single third party witness who does not object to her deposition being taken".).

Moreover, contrary to defendants' assertion, plaintiffs do not seek broad discovery of Zions to find a sustainable claim, but rather seek only particularized discovery to add specific factual details to the Complaint's existing allegations, if the Court so requires.  Specifically, plaintiffs seek limited discovery from Zions and its CEO and CFO regarding (i) the condition of First Security's installment loan portfolio during the Class Period, (ii) First Security's loan write-off policies and practices, and (iii) information relating to Zions' determination that Defendants had misrepresented First Security's fourth quarter 1999 operating earnings by $0.04, as disclosed in Zions' supplemental proxy statement filed March 15, 2000.[2]

Granting such narrowly tailored relief from the PSLRA discovery stay is fully in accord with existing case law precedents where district courts have allowed limited discovery.  See, e.g., Flir, 2000 U.S. Dist. LEXIS 19291, * 6 ("it is highly likely that Palmquist, a third party, has significant information about defendants' alleged fraud"); Vacold LLC v. Cerami, 2001 U.S. Dist. LEXIS 1589, *20 -25 (S.D.N.Y February 16, 2001) (allowing limited discovery to proceed where plaintiffs sought specific factual information directly relevant to Plaintiffs' claims that was clearly in the possession of defendants and *third parties*) (emphasis added).  Here, it is clear that Zions has specific information that is directly relevant to Plaintiffs' claims, since Zions conducted a thorough review of First Security's

---

[2] Each of these subject matter is detailed as much as possible in the Complaint.  See ¶¶ 9, 12, 13, 14, 39, 40, 43, 46-48, 50-53, 55-57, 71, 74-79.

books and operations in conjunction with the contemplated merger of the two companies. For example, as alleged in the complaint, it was Zions that ultimately filed a supplemental proxy on March 15, 2000 disclosing its discovery of Defendants' misrepresentation of First Security's 1999 fourth quarter operating income. Accordingly—as even defendants must concede—it is highly likely that Zions has detailed back-up information for such a serious charge, Cf. Flir at *6-7.

## CONCLUSION

In sum, Defendants' opposition to Plaintiffs' request for a limited lifting of the discovery stay is based not on any concern that they will be exposed to "coercive" discovery costs or frivolous claims, but is instead based on concerns that the truth concerning allegations of fraud that have already been pled in considerable detail will come out, and that they will then be held accountable for their fraudulent conduct. This latter type of "prejudice" is clearly not the type of prejudice that would justify denial of Plaintiffs' motion. To the contrary, to allow a confidentiality agreement to prevent plaintiffs from obtaining relevant information from otherwise willing sources would run squarely counter to public policy, particularly where there is every indication that plaintiffs are pursuing meritorious -- rather than frivolous—claims. In these circumstances, plaintiffs have suffered precisely the type of "undue prejudice" that warrants the limited relief sought here.

For the foregoing reasons, Plaintiffs' motion for a limited partial lifting of the stay of discovery, to permit plaintiffs to serve subpoenas and accompanying document requests on Zions, Zions' CEO, Zions' CFO, and up to one other current or former Zions employee (as may be necessary to provide specific details concerning First Security that Zions' CEO and CFO may be unable to provide) should be granted.

10

Dated:  May 3, 2001.

**ANDERSON & KARRENBERG**

Scott A. Call
**Liaison Counsel for Plaintiffs**

**SCHIFFRIN & BARROWAY, LLP**
Andrew L. Barroway
Stuart L. Berman
Marc I. Willner
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004
Telephone:  (610) 667-7706
**MILBERG WEISS BERSHAD**
  **HHYNES & LERACH LLP**
Lori G. Feldman
1001 Fourth Avenue, Suite 3200
Seattle, Washington 98154
Telephone: (206) 839-0730

**WEISS & YOURMAN**
Kevin Yourman
Behram Parekh
10940 Wilshire Boulevard, 24th Floor
Los Angeles, California 90024
(310) 208-2800

**MILBERG WEISS BERSHAD**
  **HHYNES & LERACH LLP**
William C. Fredericks
Brian C. Kerr
One Pennsylvania Plaza
New York, New York 10119
Telephone: (212) 594-5300

**WEISS & YOURMAN**
Joseph H. Weiss
Jack Zwick
551 Fifth Avenue, Suite 1600
New York, New York 10176
Telephone: (212) 682-3025

**Co-Lead Counsel for Plaintiffs**

11

Exhibits/
Attachments
to this document
have **not** been
scanned.

Please see the
case file.